

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7458 | **DATE** | 2/6/2002 |
| **CASE TITLE** | Credit Insurance etc. et al. Vs. Gerling Global etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions to dismiss are granted in part and denied in part, and third party and counterclaim defendants' motion to dismiss is denied. Counts II, III, VI and VIII of the consolidated complaint are dismissed and defendant ANPAC is dismissed from count VII. Status hearing set for March 6, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 08 2002 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| ✓ | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| WAH courtroom deputy's initials | | 02 FEB -7 PM 4:27 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



CREDIT INSURANCE CONSULTANTS, INC., )
d/b/a CIC AUTOMOTIVE CORP., CONLEY )
INSURANCE GROUP, and AMERICAN )
FINANCIAL & AUTOMOTIVE SERVICES, )
INC., )
)
          Plaintiffs, )
)
vs. )  No. 00 C 7458
)
GERLING GLOBAL REINSURANCE )
CORPORATION OF AMERICA, INSURANCE )
ADMINISTRATION SERVICES, INC., and )
AMERICAN NATIONAL PROPERTY AND )
CASUALTY COMPANY, )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Credit Insurance Consultants, Inc. (CIC), Conley Insurance Group (Conley) and American Financial & Automotive Services, Inc. (AFAS) brought a consolidated complaint against Gerling Global Reinsurance Company of America (Gerling), Insurance Administration Services, Inc. (IAS), and American National Property and Casualty Company (ANPAC ). The ten counts of the complaint include three counts of fraud against Gerling (counts II, VI, VIII) and three counts of interference with business relations against the three defendants (counts III, VII, IX). Gerling moves to dismiss the fraud claims against it under Fed.R.Civ.P. 9(b) and 12(b)(6). All three defendants move to dismiss the interference with business relations counts against them under Rule 12(b)(6).

Gerling has brought counterclaims against the plaintiffs and claims against a third party defendant, Arden D. Hetland (Hetland). The third party and counterclaim defendants

move to dismiss two of the counts against them under Rule 12(b)(6): Count III, alleging violation of the Illinois Consumer Fraud Act (ICFA), and count IV, alleging civil conspiracy. For the following reasons, Gerling's motion to dismiss the fraud claims is granted; defendants' motion to dismiss the interference with business claims is granted in part and denied in part; and the third party and counterclaim defendants' motion to dismiss counts III and IV of the counterclaims is denied.

## BACKGROUND

Plaintiffs market extended warranty programs available to purchasers of automobiles, and Gerling has insured the programs marketed by plaintiffs. At the end of February 2000, IAS became responsible for administering certain extended warranty programs insured by Gerling, and ANPAC acted as the issuing insurance company for a portion of the Gerling extended warranty program.

According to plaintiffs, Gerling learned that its claims reserves were inadequate and it decided to get out of the business. However, since premiums for the extended warranty are paid up-front, a withdrawal from the business meant that nothing would be coming in but that claims would have to be paid for several years thereafter. Plaintiffs assert that Gerling concealed its plan to terminate its program and misrepresented its intentions during meetings and telephone calls with plaintiffs.

Plaintiffs contend that Gerling caused IAS to be substantially unavailable for prior approval, necessary for performance of repairs; to wrongfully deny claims submitted after sixty days from the authorization date; to refuse to pay commissions due and payable; and to act wrongfully in other respects. These actions or inactions, they claim, interfered with their business relations with auto dealers. Further, plaintiffs assert that ANPAC is responsible for

the alleged wrongful claims practices to the extent that it was the issuing insurer for part of the Gerling extended warranty program.

In its counterclaims and third party claims, Gerling alleges that the warranty marketers and auto dealers acted together to overwhelm the claims administrator by filing or causing to be filed identical complaints to state departments, and for tying up claims administration phone lines by filing illegitimate claims directly with the administrator. The alleged purpose of these actions was to cause Gerling to pay unwarranted claims to the parties and auto dealers. Gerling asserts that this alleged campaign was a ploy by the marketers to show loyalty to the dealers and to divert attention away from the marketers' prior misrepresentations to the dealers.

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). A claim survives if relief could be granted under any set of facts that can be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While a complaint does not need to specify the correct legal theory to withstand a 12(b)(6) motion, it must allege all elements of a cause of action necessary for recovery. Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir. 1985) *cert. denied* 475 U.S. 1047 (1986).

Complaint Counts II, III, VI-IX

Gerling's first ground for dismissal of the fraud claims is failure to plead with the particularity required. Rule 9(b) requires that the circumstances constituting an alleged fraud or mistake be stated with particularity. The circumstances of an alleged wrongdoing

include the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1990). A claim must give us the who, what, when, where and how – "the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990).

Plaintiffs assert that Gerling committed fraud when it allegedly represented that it was committed to continuing its extended warranty program, knowing that these representations were false. The specifics that plaintiffs offer are that beginning in the spring of 1999, and continuing through February 2000, officers and managers of Gerling, in the course of personal meetings and telephone calls with plaintiffs, misrepresented that Gerling intended to correct the problems of its inadequate claims reserves and continue its extended warranty program. Plaintiffs have provided the what and the how of the fraud, but the who, when and where are unclear.

Plaintiffs assert that their claim is sufficient since they are alleging a fraudulent scheme. Rule 9(b) may be satisfied if a plaintiff provides an outline of a fraudulent scheme such that a defendant is reasonably notified of his alleged role. Fujisawa Pharmaceutical Co., Ltd. v. Kapoor, 814 F.Supp. 720, 731 (N.D.Ill. 1993). We agree that plaintiffs do not have to plead each and every act of fraud within an alleged scheme, but, since they are alleging a scheme of promissory fraud, they need to plead at least one specific manifestation of the fraudulent scheme. Advent Electronics, Inc. v. Buckman, 918 F.Supp. 260, 265 (N.D.Ill. 1996) *citing* Bower v. Jones, 978 F.2d 1004, 1012 (7th Cir. 1992). Plaintiffs have failed to allege any specific fraudulent act.

A complaint should also specify which defendant participated in each alleged incident

of fraud. <u>Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co.</u>, 161 F.Supp.2d. 876, 886 (N.D.Ill. 2001). Plaintiffs here have identified that it was one defendant, Gerling, who committed the acts. They have not specified, however, any Gerling employee or employees who committed the alleged acts of fraud. Plaintiffs should identify specific actors in the representative incidents. They have not met the particularity pleading requirements of Rule 9(b).

But that is not the only infirmity of the fraud pleading. Plaintiffs base their fraud claims "on information and belief," and that is generally not enough. <u>Bankers Trust Co. v. Old Republic Insurance Co.</u>, *supra,* at 683-84. They seek refuge, however, in an exception: that if the facts are inaccessible to plaintiffs they need plead only the grounds for their suspicion. They claim to have adequately done so.

That leads into another failing. "Promissory fraud is generally not actionable in Illinois, but there is an exception to this rule 'where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud.'" <u>Bower v. Jones</u>, 978 F.2d 1004, 1011 (7th Cir. 1992). That means the claimant must be able to point to specific objective manifestations of fraudulent intent – a scheme or device. <u>Advent Electronics, Inc. v. Buckman</u>, 918 F.Supp. 260, 264 (N.D.Ill. 1996). *See also* <u>J. H. Desnick, M.D. v. American Broadcasting Companies, Inc.</u>, 44 F.3d 1345, 1354 (7th Cir. 1995). Here the suspicion and the objective manifestation are that Gerling did not keep its promise and that it wanted premium dollars to keep coming in. A broken promise is insufficient by itself to support a promissory fraud claim. *Id.* And what fraud scheme? It is unreasonable to conclude that Gerling wanted to induce the plaintiffs to continue to generate business for it up to the time of actual termination, because, all agree, it was losing money on that business. Plaintiffs are, in effect,

contending that Gerling sought to defraud the plaintiffs so as to increase its losses. The motions to dismiss counts II, VI and VIII are dismissed.

Plaintiffs have also alleged that all three defendants interfered with the business relationships between plaintiffs and various auto dealers. Under Illinois law, the elements of a claim for intentional interference with prospective business relations are a reasonable expectation of entering into a valid business relationship; the defendant's knowledge of the plaintiff's expectancy; purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and damages to the plaintiff resulting from such interference. Fellhauer v. City of Geneva, 142 Ill.2d 495, 568 N.E.2d 970 (1991). Defendants argue that plaintiffs have not properly alleged interference with a protected relationship since defendants are too closely connected with plaintiffs and the dealers.

A defendant cannot be liable for interfering with his own business relationship. Young v. Connecticut Mutual Life Insurance Co., 1990 WL 125496 *4 (N.D.Ill.). The interference must be directed toward a third party to induce the third party from entering a prospective economic relationship with the plaintiff. *Id*; National Service Association, Inc. v. Capitol Bankers Life Insurance Co., Inc. 832 F.Supp. 227, 233 (N.D.Ill. 1993). Plaintiffs must allege that defendants are wrongfully disrupting a separate prospective economic relationship. National Service Ass'n, 832 F.Supp. at 233. Put another way, we look to see if plaintiffs have alleged a situation where there are "outsiders intermeddling in the contracts or affairs of other parties." Fellhauer, 142 Ill.2d at 513, 568 N.E.2d at 879, *citing* Loewenthal Securities Co. v. White Paving Co., 351 Ill. 285 (1932).

The relationships among the parties and the dealers are not fully flushed out at this

stage in the pleadings. The complaint establishes enough of an outline, however, to make a preliminary determination regarding whether the defendants are outsiders to each of the asserted prospective business relationships. All the parties are connected in business through the splitting of the income from sales of the Gerling program. There is a multi-party contract between the defendants, the dealers, and auto customers. There is a contract between plaintiff AFAS and NAWS, the third party administrator replaced by defendant IAS, for marketing and servicing of the warranty program insured by Gerling. There do not appear to be any contractual relationships between CIC and defendants or Conley and defendants.

Looking at these relationships all together, we are not presently persuaded that there is enough of a connection between the defendants, the dealers and plaintiffs CIC and Conley to dismiss a prospective business interference claim. Plaintiff AFAS, however, has alleged a closer connection with defendants, and the defendants should not be considered outsiders interfering with AFAS' relationship with the dealers. AFAS' claims for interference with business relations in Count III are dismissed.

We also dismiss any interference with business claims made against defendant ANPAC. One of the requirements of a claim for interference with prospective business relations is purposeful interference by the defendant. Citylink Group, Ltd. v. Hyatt Corp., 313 Ill.App.3d 829, 841, 729 N.E.2d 869, 877 (1st Dist. 2000). Allegedly, ANPAC's interference occurred when it did not affirmatively act to stop IAS and Gerling's wrongful conduct. This alleged inaction does not rise to the level of intentional interference. Accordingly, ANPAC is dismissed from Count VII in addition to Count III.

Counterclaims and Third Party Claims, Counts III and IV

Gerling claims that the third party and counterclaim defendants violated the Illinois

Consumer Fraud and Deceptive Business Practices Act (ICFA) when they allegedly made knowingly false statements that influenced the actions of dealers and consumers. Counter-defendants argue that Gerling does not have standing to bring this claim under the ICFA since it is not a consumer and has not adequately alleged a nexus with consumer concerns. Gerling counters that the alleged campaign implicates consumer concerns since counterdefendants allegedly marketed the Gerling program and then caused the program to be unable to meet the promises made by the marketers. Gerling also argues that there is a direct effect on consumers in Illinois and across the country since swamped phone lines have meant that consumers with legitimate claims are being denied prompt administration.

While ICFA claims are usually brought by consumers, a non-consumer may bring a claim if he can allege a nexus between the complained-of conduct and consumer protection concerns. Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 437 (7th Cir. 1996). A plaintiff must plead that the alleged conduct involves trade practices addressed to the market generally, or otherwise implicates consumer protection concerns. Id; Downer's Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 190 Ill.App.3d 524, 533, 546 N.E.2d 33, 4 (2nd Dist. 1989). One Illinois court has gone so far as to require that a plaintiff who is claiming an implication of consumer protection concerns must specifically plead that his actions were akin to a consumer's actions; how defendant's actions concerned consumers other than plaintiff; how defendant's actions involved consumer protection concerns; and how the requested relief would serve the interests of consumers. Brody v. Finch University of Health Sciences/The Chicago Medical School, 298 Ill.App.3d 146, 160, 698 N.E.2d 257, 269 (2d Dist. 1998).

While the scope of what constitutes consumer protection concerns is under debate, courts have generally required some allegations of sharp practices designed to mislead

consumers about a competitor, or an implication of public health, safety or welfare issues. Simon v. Oltmann, 2001 WL 1035719, *8 (N.D.Ill.); Learning Curve Toys, L.P. v. Playwood Toys, Inc., 1999 WL 529572, *5 (N.D.Ill.) (claims sufficient if alleged that consumers were harmed by the complained-of conduct or a product was designed to mislead the public), Stickle Enterprises, Ltd. v. CPC International, Inc., 1997 U.S.Dist. LEXIS 19538 *13 (N.D.Ill.) (claims sufficient where public safety concerns are involved). Gerling has alleged that third party and counterclaim defendants have made misleading statements to dealers and consumers, and have implemented a campaign that has kept consumers from accessing the services they purchased. Under the minimal standard of 12(b)(6), Gerling has adequately alleged a nexus with consumer protection concerns and the ICFA claim stands.

Gerling has also brought a claim that third party and counterclaim defendants committed civil conspiracy. It claims that the marketers, as well as various auto dealers not named in the counterclaims, allegedly agreed between and among themselves to disparage the products, services, and business practices of Gerling, defame it, defraud it, and violate the ICFA. Counterdefendants argue that Gerling's conspiracy claim adds nothing to the counterclaims and should be dismissed for failing to adequately allege a conspiratorial relationship.

Under Illinois law, a civil conspiracy claim must include allegations of an agreement and a tortious act committed in furtherance of that agreement. McClure v. Owens Corning Fiberglass Corp., 188 Ill.2d 102, 133, 720 N.E.2d 242, 258 (1999), *citing* Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 645 N.E.2d 888 (1994). Mere conclusory allegations of a combination of acts as a conspiracy is not enough to state a claim for conspiracy. Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill.2d 12, 23, 694 N.E.2d 565, 571 (1998). The alleged conspirators'

agreement is an essential part of the cause of action. <u>McClure</u>, 188 Ill.2d at 133.

Counterdefendants assert that Gerling has only alleged parallel conduct of the parties, which does not rise to the level of civil conspiracy. <u>McClure</u>, 188 Ill.2d at 135. While it is true that Gerling eventually will have to show that the alleged actions were concerted rather than merely parallel, at this stage Gerling is only required to allege agreement and a tortious act committed in furtherance of the agreement. Gerling has alleged that "Third Party and Counterclaim Defendants have worked together and discussed the actions they would take with respect to their scheme..." (Counterclaim para. 65). They have also listed alleged tortious acts committed in furtherance of the agreement. Gerling has satisfied the pleading requirements and the civil conspiracy claim stands.

## CONCLUSION

For the above reasons, defendants' motions to dismiss are granted in part and denied in part, and third party and counterclaim defendants' motion to dismiss is denied. Counts II, III, VI and VIII of the consolidated complaint are dismissed and defendant ANPAC is dismissed from count VII.

*[signature]*
JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 6, 2002.